UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

SURGICAL SPECIALISTS OF GREATER
NEW YORK as authorized representative of
BRIDGET TAYLOR,                                           Civil Action No.

                                        Plaintiffs,

                        - against -                            **COMPLAINT**


AETNA, INC., AETNA HEALTH, INC.,
and AETNA LIFE INSURANCE COMPANY,

                                        Defendant.
----------------------------------------------------------------------X

        Plaintiff, SURGICAL SPECIALISTS OF GREATER NEW YORK ("Plaintiff" or

"SSGNY") as authorized representative of CYNTHIA RYAN ("Patient"), by and through their

attorneys, Stein Adler Dabah & Zelkowitz LLP and Drachman Katz LLP as and for their

Complaint against defendant, AETNA, INC., AETNA HEALTH, INC., and AETNA LIFE

INSURANCE COMPANY ("Defendants" or "Aetna"), state as follows:

## NATURE OF ACTION

        1.      This is an action arising under the laws of the United States, specifically the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., for

Defendant's wrongful denial/underpayment of Patient's health insurance benefits.

## PARTIES

        2.      At all material times, SSGNY is a multi-specialty medical surgical practice of

highly trained and experienced academic surgeons, and other related healthcare practitioners, in

the County of New York in the State of New York, located at 1060 Fifth Avenue New York, New

York 10128.  Plaintiff's doctors perform complex, critical, often lifesaving, surgeries in emergency situations, and often referred by other surgeons.

3.      Aetna Inc. is duly-authorized to transact business in New York, with its corporate headquarters and principal place of business located at 151 Farmington Avenue, Hartford, CT 06156.

4.      Aetna Health, Inc. is duly-authorized to transact business in New York, with its corporate headquarters and principal place of business located at 151 Farmington Avenue, Hartford, CT 06156.

5.      Aetna Life Insurance Company is a corporation duly authorized to transact business in New York, with its corporate headquarters and principal place of business located at 151 Farmington Avenue, Hartford, CT 06156.

6.      Aetna, Inc., Aetna Health, Inc., and Aetna Life Insurance Company (or, collectively herein, "Aetna") underwrite and/or administer certain commercial health plans through which healthcare expenses incurred by Plan insureds for services and/or products covered by the Plans are reimbursed by and/or through Aetna, subject to each Plan's terms and conditions

7.      Upon information and belief, Aetna is primarily engaged in the business of providing and/or administering health care plans or policies in the state of New York.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).  The insurance policy at issue was provided to the employer of Patient and is governed by ERISA, 29 U.S.C § 1001 et seq.

9.     ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process.  Upon information and belief, Defendant is a resident of the United States and subject to service in the United States, and this Court therefore has personal jurisdiction over it.

10.     All conditions precedent to the institution of this action, i.e., administrative appeals have occurred, been performed, and have been exhausted.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that this is the district in which a substantial amount of the events complained of herein occurred.  Moreover, Defendant is authorized to do business in the State of New York, advertises and promotes its services in the State of New York, were present and engaged in significant activities in the State of New York to sustain this Court's exercise of *in personam* jurisdiction.

## FACTUAL ALLEGATIONS

12.     At all material times, Patient received health insurance coverage by way of an ERISA governed employee welfare benefit plan (the "Plan").

13.     On February 17, 2020, Patient was undergoing surgery at Lenox Hill Hospital for a hysterectomy.  During the surgery, the gynecological surgical team realized that Patient, a then sixty-one (61) year-old woman required an emergency intraoperative "call for help" from a specialized surgeon in order to treat a life-threatening condition from the extensive adhesions between the uterus, fibroids, colon, small bowel, omentum, and urinary bladder.

14.     Dr. Panagiotis Manolas of SSGNY, a colorectal surgeon on call at Lenox Hill Hospital, was called in on emergency basis.

15.     Dr. Manolas emergently removed the adhesions, and tested the urinary bladder and rectum to confirm that there was no damage to these areas.  This emergency intraoperative intervention was necessary to ensure that Bridget had a successful surgical procedure.

16.     This call for help occurred during surgery, in response to unexpected complications and discoveries by the medical team while the surgery was already underway.  As Patient was under anesthesia, she had no ability to exercise any choice in which physicians would treat her.

17.     Patient had no prior knowledge SSGNY's services would be necessary, and she was in no position to choose a provider at such time and to determine whether such provider participates in her insurance. Since the medical necessity of this procedure is not in question, this procedure must be viewed as an emergency, and processed under the applicable hold harmless clause in accordance with Patient's policy and applicable state law for emergency intraoperative services claims.

18.     The surgery was successful and Plaintiff provided reasonable, medically necessary and life-saving services to Patient.

19.     Subsequently, a Health Insurance Claim Form was submitted to Defendant or its agent for an amount totaling $45,477.60 for the treatment/services/supplies discussed above.

20.     The charges for the services performed by Plaintiff and its medical staff are in line with other medical providers and specialists in their geographic area.

21.     Defendant, however, remitted $5,795.00, for the above-referenced treatment.

22.     Critically, Defendant drastically underpaid the medical providers at SSGNY by either (a) not remitting any payment for certain CPT codes; (b) entirely overlooking that unexpected complications arose whilst Patient's surgery was underway, that Patient was under extremely precarious conditions, was unconscious and under anesthesia, and was in no position to choose a provider at such time and to determine whether such provider participates in her insurance, and (c) remitting a nominal payment drastically *under* the 80th percentile of Fair Health for other CPT Codes.

23.     Despite numerous and thorough appeals, Defendant has failed to remit the correct amount due, largely without reasonable explanation or justification as to the basis for denial.

24.     Defendant underpaid its reimbursement of all services and accordingly, Plaintiff brings this action for the recovery of the balance of benefits due to Patient under the Plan, in the amount no less than $39,682.60 for the treatment rendered to him by Plaintiff.

25.     As the surgery involved urgent care, pursuant to 29 CFR § 2560.503-1(b)(4), Plaintiff is permitted to act as the authorized representative of Patient, and possesses the legal authority to recover the benefits from UHC due to Patient.

## AS AND FOR A FIRST CAUSE OF ACTION
### *(Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))*

26.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as if fully set forth herein.

27.     ERISA § 502(a)(1), codified at 29 U.S.C. § 1132(a)(1)(B), provides a cause of action for a beneficiary or participant seeking benefits due payment under the terms of an ERISA governed plan.

28.     Defendant improperly denied benefits due to Patient under the terms of the Plan.

29.     Critically, Defendant drastically underpaid the medical providers of Surgical Specialist by either (a) not remitting any payment for certain CPT codes; (b) remitting payment drastically under the 80th percentile of Fair Health for other CPT Codes, and (c) inexplicably basing its denial of appeals based upon the scheduled complex endometriosis surgery, entirely overlooking that unexpected complications requiring emergency surgery arose whilst the scheduled surgery was underway.

30.     As a result of Defendant's breach, Plaintiff is entitled to damages, including but not limited to, costs, expenses, and attorneys' fees.

5

## AS AND FOR A FIRST CAUSE OF ACTION

*(Breach of Fiduciary Duty and Co-Fiduciary Duty Under 29 U.S.C.*
*§ 1132(a)(3), Under 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a))*

31.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as if fully set forth herein.

32.     29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

33.     Plaintiff seeks redress for Defendant's breach of fiduciary duty and/or Defendant's breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a).

34.     29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

35.     Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.  *See* 29 U.S.C. § 1104(a)(1).

36.     29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

37.     Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care"] of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.  *See* 29 U.S.C. § 1105(a).

38.     Here, when Defendant acted to deny payment for the medical bills at issue herein, and when it responded to the administrative appeals initiated by Plaintiff, it was clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

39.     Here, Defendant breached its fiduciary duties by: (1) participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and (3) wrongfully withholding money belonging to Plaintiff.

## TRIAL COUNSEL DESIGNATION

Jacob E. Lewin, Esq. of Stein Adler Dabah & Zelkowitz LLP are hereby designated as Trial Counsel in the above matter.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgments against Defendants as follows:

A.     On the First and Second Causes of Action, damages including, but limited to, past-due contractual benefits as set forth in the Plan, but in no event less than $39,682.60.

B.     Costs and expenses, including attorneys' fees;

C.     Interest; and

D.     Such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         November 22, 2021

STEIN ADLER
DABAH & ZELKOWITZ LLP

By: _____
        Jacob E. Lewin, Esq.
      1633 Broadway, 46th Floor
      New York, New York 10019
      (212) 867-5620


DRACHMAN KATZ LLP


By: */s/ David Katz*
        David Katz, Esq.
      115-06 Myrtle Avenue
      Richmond Hill, New York 11418
      (718) 407-2411

      *Attorneys for Plaintiff*